We will begin with the case of Holmes v. Christie. And we'll hear from you, Mr. Savignac. Thank you, Your Honor. Good morning. My name is Mark Savignac. This court appointed me to represent the plaintiff appellant in this case, a New Jersey state prisoner named Wilford Lee Holmes. I'd like to reserve four minutes for rebuttal. Granted. This is a constitutional challenge to New Jersey's retroactive application of certain changes to its parole law. In the Garner case, the Supreme Court said it's unconstitutional for a state to retroactively apply a change to its parole law if the change creates a sufficient risk of increasing the measure of punishment by keeping the inmate in prison longer. The change in law at issue here greatly expanded the grounds on which the parole board can deny parole. Before 1997, the law required the board to grant parole unless new information from after the inmates previous parole hearing showed a substantial likelihood that he would commit more crimes if released. In 97, New Jersey deleted that keyword new. So the 97 amendment allows the board to deny parole based on the inmates pre incarceration criminal record, which seems to Sorry, counsel, the the you've asked us to hold this ex post facto violation as a matter of law for all cases. But isn't that risk case dependent? And we can talk about the facts here for your client. But why, in that in some cases, it may make no difference whatsoever to the risk of prolonged incarceration. Why should we hold as a categorical matter that this amendment to the Certainly, I would like to focus primarily on on my client, the Supreme Court in Garner speaks of the possibility that a a change will by its terms create that sufficient risk of keeping inmates in prison longer. And I think that that's, that's basically true here. Because by authorizing the parole board to consider old information. And with that, well, that's that. So So I mean, that that's a theoretical argument, the notion that yeah, they can consider more information. Thus, there's a significant risk, I believe that Garner uses the phrase significant to fill in the ambiguity of what sufficient means. But at bottom, I think what Judge Krause was asking, and I'll put it up, maybe I'll just rephrase her question is, is I read Garner, it says this is an as applied analysis. And so aren't you bringing on behalf of your client, and as applied challenge to look at his facts and circumstances and the likelihood for risk assessment purposes of what the parole board would do in his individual case, and we'll compare the new standard with the old standard, isn't that isn't that the analytical framework that we're evaluating this under? I think that's fair, Your Honor, the question is, in my client's individual case, looking to all the facts, including the facts about how the parole laws have been applied to other people in similar situations, is there a significant risk that this changed the outcome? And I think it clearly did. The the old information that was considered here was all this information about Mr. Holmes crimes that landed him in prison in the parole board. Wait, wait, wait, I read that parole board decision entirely differently. And in my view, what they did is they said, you've committed these crimes in 72 and 73. We want to know what your current attitudes are, vis a vis your prior crimes. And so they're looking at his current state. And they say, hey, you haven't gained any insight, you don't demonstrate remorse, you haven't accepted responsibility. We're looking at your current, his current status based on past crimes, you don't think that the new 1997 statute prohibits them from looking back at his current attitudes on past crimes, do you? I think that they are permitted to ask him about his his current attitude to ask him, you know, if he if he's basically turned over a new leaf. And that is part of what they did. But if you look at the reasons that they gave for denying parole, it was not merely you lack insight into your old crimes. The first several reasons are things like you committed a crime, you committed several crimes, you committed crimes previously when you were out on parole for even earlier crimes. And those are things that I think both sides agree could not have been considered under the pre 97 law. And so is so isn't the real question then whether each of the reasons given by the parole board is sufficient on its own, or whether this is kind of an accumulation of reasons that only has persuasive value in the aggregate. Because they do give they do give reasons that are based on current attitudes, if those are adequate on their own, then the change in law has no bearing. But if those are just one of the many factors that go into the termination, maybe you could say, well, you know, maybe maybe the other factors, if you subtract those, we don't have enough. I think that's basically right, you have to compare the, the old information, and the new information. But the question remembers only if there's a sufficient or, as you say, a significant risk that considering the old information affected the outcome of this parole hearing. So if the parole board said, we have pages six through 10 of our analysis, insufficient problem resolution, which is basically an analysis of new information. And they said, we find that insufficient problem resolution is an adequate insufficient basis for denying parole to Mr. Holmes, then then then, as applied to your client, this change in law would have no bearing. Right? Well, I think that that would be don't say that. But if they correct, they don't say that. And that's the first thing I should have said. I think that would be a tricky question. Because the question for the federal court would be whether there's a significant risk that the other things affected the outcome. But I suppose if they said, we want to be absolutely clear, this old information is not affecting our outcome, we promise you what it's an independent reason, it's an independent reason for we have three independent reasons. And if we can't do those, we've still got this. So isn't our real inquiry then to focus on whether insufficient problem resolution on its own would constitute an independent reason if it would, and as applied to your client, there's no sufficient or significant risk increase if it if it's one of many, then we have to kind of look at one into the consideration. Well, I guess I just don't know how we would ask whether it would be a sufficient reason. Certainly, in theory, you could imagine a parole board denying parole based on that reason alone. But that's not what happened here. And, you know, we can't read their minds. I think if you look at their opinion, and at the reasons they gave, is it clear that they would have reached a different result if they hadn't considered the old information? I think it's pretty clear. But But even if you disagree with that, the question is just whether there's a significant risk. And here is that, that we send this back for the parole board to say just that. Right? Well, that would be that would be an interesting remedy. I mean, the remedy that we're seeking is for you to send it back for the parole board to consider him under the old standard meaning, without looking at this old information, I guess that that comes to largely the same thing is telling them. Tell us basically, tell us whether you tell us what you would do if you just applied the pre 97 law. I mean, I think that's right. They're not going to put this information. They're already aware of this information, as we know, but had they articulated it in the terms that Judge Phipps outlined, and, and that were before us, it sounds like you agree, were framed that way, that there would not be an as applied claim. I agree that that would be a much harder case. Because as I say, ultimately, the only remedy we're asking for is in order telling them to consider his parole application under the the old version of the law. And, and I, you know, it comes to it comes to much the same thing as saying, looking only at new information, what is your decision in this case, under the old version of the law, that's that's just as to your client, right? I mean, you're, you're asking for an expansive application of that rule. Well, the the this case is was filed, per se, by my client as a putative class action, there hasn't been any decision by the district court about whether to certify a class, it was just dismissed it under 12 v six. So for the purposes of this appeal, I think it makes sense to focus on the client himself. If the board determines that based on new information, the prisoner is likely to recommit another crime, should public safety be an important consideration? I, yes, I mean, I think that public safety is ultimately what the New Jersey law is, getting out when it says, if you find that this person, there's a substantial likelihood that they would commit crimes if released, then don't let them out. I think that I think that ultimately, that is focused on public safety. How would you rebut appellee showing that 22 prisoners have been granted parole since 1997? Well, so we have we have incomplete information here. And part of what Mr. Holmes was trying to through discovery before the case was dismissed was to get more complete information. So the state says some people have been paroled under this new law, it's not impossible to be paroled. We don't know how many people have been denied parole. There are very strong reasons even without discovery to believe that it's much harder to get parole now than it used to be. Because we have the Trentino case, which explains that more than 90% of the people who are on death for murder when the state abolished the death penalty, got out on parole in 20 years or less. And all of those people got out after less time than Mr. Holmes has been in prison. So far, so so it does look like it was much easier to get out on parole previously than it is now. The people that the state points to have who have been paroled since 1997. They seem to have been in prison much longer than those death row murderers were before the 97. I mean, I mean, at one level, though, these are aggregate statistics. And Garner says we're looking at the individual circumstances of an as applied test. And so, in aggregate, those may be trend lines. But But in another level, we're supposed to look at an individual. And in the Supreme Court said this in green holes, and it quoted it quoted a law review article, but said, basically, when it's speaking of the parole decision, it says it turns on a discretionary assessment of a multiplicity of imponderables, entailing primarily what a man is, and what he may become, rather than simply what he has done. And so if the primary emphasis of a parole determination, as explained by the Supreme Court, is what a what an inmate is, and what that inmate will become. And this parole board did that exact analysis. And that's the primary analysis under the Supreme Court. How is there a significant risk that that your client would get a different outcome, or have an increase in punishment? Well, I think that the the main argument that there's a significant risk is the parole board focused on this old information that it could not considered before. And it reached an outcome in this case, which is that Mr. Holmes has been in prison for for decades, that is very hard to square with the outcomes that were reached for more or less similarly situated people, people who were sentenced to death for their murders, prior to the 1997 change. And so, of course, the ultimately, the question is about my client. But I certainly think that the experience of other similarly situated people is relevant, especially when it's, there's such a strong trend that it seems to have been so easy to get out in 20 years or less before the 97 change. And now it's it's hard to get out at all. And even the people that the state points to who have been let out, that was after 30 or 40 years. Mr. Savignot, could you help us understand in terms of what change was actually wrought by this amendment, the administrative code, section 10A 71-3.11b, it identifies the factors that are to be considered at a parole hearing. And even pre 97, that list included the nature and pattern of previous convictions, facts and circumstances of the offense, aggravating and mitigating factors around the offense. If the parole board was authorized by the administrative code to take those factors into consideration in determining whether someone had, there was a substantial likelihood that they would reoffend. Why is there any increase in risk of prolonged detention now? Well, that might be a good question for the state. No one has no one has argued in this case that the parole board was considering all this old information before 1997. When it came to successive parole hearings, they were allowed to consider it at your initial parole hearing is my understanding. But this case focuses on successive hearings. So to the extent that there's an argument about that, I suppose that the state has forfeited it. But I was not aware of that. I haven't seen that argument raised. Could the board have denied parole solely on the mental health assessments that were conducted from 2008 to 2012? Well, whether they could have chosen to do so, and not to talk about the old information that would have been off limits before 97, I guess that's just a question of state law. I don't know whether a state court reviewing that decision would have upheld that as a sufficient basis to deny parole or not. But it's not part of the ex post facto issue. What specific remedy are you seeking? We're seeking in order requiring the state parole authorities to hold a new hearing and consider Mr. Holmes for parole again, applying the version of the law enforced before 1997, which principally means without limiting their consideration to new information rather than looking at his pre-incarceration criminal record. And I believe I'm into my rebuttal time. Thank you very much. Counselor, just one more question, unless my colleagues have others at this point. But you indicated in your response to Judge Fuentes that psychological assessments that had been conducted in the interim between the parole hearings would not pose an ex post facto problem. If that's the case, then how could the objective risk assessment create an ex post facto problem? In effect, isn't that the same type of assessment? Well, I don't know whether it's the same type of assessment. We haven't had discovery. I haven't seen the instruments that's being referred to, nor have I seen the psychological assessments from 2008 and so forth. So the first question would be whether in general something about this objective risk assessment basically puts a thumb on the scale against parole relative to what existed before. The second would be if it poses the same issue that we've been talking about all morning, which is that it incorporates old information, that it basically says, well, has this guy committed crimes before? Has he committed murder? Has he committed multiple crimes and so on? And we're going to put a lot of points on that. And of course, if the board adopts a point system that puts a lot of points on old information and denies parole if you have a lot of points, then that would be a way of considering that old information, which was not permissible before 1997 and is not permissible after 1997 for my client under the ex post facto clause. And is that to say that you suggested that the psychological assessments that would have been conducted would have been without regard to the nature of his prior offenses? I don't know whether they were or not, but looking to the the law that required any denial to be based on new information, I believe that they would have had to have been. And we will come back to you on rebuttal, but would you like to take a minute or so to address your due process clause argument? Sure, I'd be happy to. So the due process clause protects the liberty interests of Americans once the state has chosen to confer them. The Supreme Court has said that if state confers a protected liberty interest, if it has a mandatory parole law, that is a law that doesn't under certain circumstances, basically entitles a prisoner to parole rather than giving the board free reign to to deny parole. It's pretty clear that the law, excuse me, that the law issue in this case meets that definition. Courts have so held. Can I just ask you a quick question on that? What is the due process problem here? I get I get at one level what what the grievance is. I want to know what government governmental action is the problem. Is it the 1997 statute or is it the way that the board conducted its hearing? Because I could imagine that the board, regardless of what the 97 statute did, the board could kind of conduct a hearing in a way that would have met all of your client's procedural needs. Or or is it do you think that's impossible based on the statute challenging both in some way? I didn't read that in the briefs. I figured you're picking one or the other, but I didn't know which one it was. Yeah, I think that the challenge is to the parole board's action. The parole board applied the wrong law. And that's the the procedural issue is that they didn't even attempt to apply the law that Mr. Holmes was entitled to have them apply. But that's that's really a substantive due process challenge. Right. Well, I think that the the challenge is to their decision about what law to apply. It's not I'm not arguing that he has a substantive right to be released from prison, but only that he has a procedural right to have the hearing done over applying the procedures, including the standard that were in effect. That he's not arguing that he didn't have sufficient notice and opportunity to be heard before the board. No, no. So this isn't really a Matthews v. Eldridge claim. This is just kind of reprising your ex post facto as a due process. I agree that the two constitutional provisions in this case, we are targeting the same violation, the same facts. I mean, we typically don't allow a due process claim when there is another more explicit constitutional guarantee on point. I mean, we typically don't let someone sue for substantive due process and takings. We say you got a takings clause. So forget substantive due process. We typically don't let people use, you know, again, there's a bunch of examples. And so it strikes me, though, that unless you're bringing a Matthews v. Eldridge claim, you're not going to be able to reprise it as a due process claim, whether it's substantive or procedural. And that's typically not what's done. I agree that there's not any need to look at the due process claim and that the case can be decided based on the ex post facto claim that they are targeting certain interests. I don't think that sort of overlap is, you know, not allowed. I think that I can think of Supreme Court cases where the court said, no, this isn't a takings issue, but it is a substantive due process issue or, you know, they considered both clauses potentially in play. But this is principally an ex post facto case. That's the provision it fits under most comfortably. Are you then withdrawing the your due process arguments on appeal? No, no, I'm not withdrawing it. My point is just that all of the relief that we are seeking can and should be provided under the ex post facto clause. And if the court agrees with that, then it would simply not be necessary to to consider the arguments under the due process clause. If public safety is important in a prison, prisoners record shows a likelihood of recommitting if released on parole. Is it that a sufficient justification for denial? Well, it's it's a the parole board is entitled to deny parole as a matter of of New Jersey law if it finds looking at the information that it is allowed to look at, which before 97 was new information that the prisoner is likely to commit another crime if released. But before 1997, New Jersey law restricted the board and said you in making that determination, you're only looking at new evidence. Basically, you're looking at has this guy shown himself to be dangerous while he's been in prison since his previous parole hearing? If he hasn't, then he should be let out. And, you know, it focuses heavily on rehabilitation. But didn't didn't the board do that analysis and find that he shouldn't be let out, that he is not rehabilitated? I mean, he continues to minimize or downplay your violent offense, continues to put forth a presentation that you're either unable and to attempt to develop adequate insight into your criminal personality characteristics. Didn't they make all of those findings that would be new information? But they also decided they just relied on old information. They relied on old and new. Right. And the news pretty strong. Well, the old is much stronger. I mean, it's there. There are these lengthy graphic descriptions of the criminal acts that fill up most of the opinion of the parole board. Again, we're just asking whether there's a significant risk that considering that adding those things to the mix changes the results. I think it's very hard to say that they didn't. And certainly that there's a significant risk. All right, we'll come back to you on rebuttal. We're asking this court to affirm the order of the district court properly dismissing in its entirety for several reasons. The removal of the word new from the parole release statute was a procedural modification that did not violate the ex post facto clause. Second, the additional consideration of the risk assessment or LSIR did not violate the ex post facto clause. And third, Mr. Holmes due process rights were not violated as he was afforded all of the process that he was entitled to. Although it has become clear today that this is not a procedural due process claim, we did argue that in our brief. Miss Hay, you focus a lot of your brief on this procedural versus substantive distinction. But we have Carmel in the picture where the Supreme Court refused to draw that line and make a distinction between procedural protections and substantive protections. And why isn't that the end of the procedural argument? I believe the appellant's argument here, as I understand it now, is that the due process issue in this case is essentially, again, a repetition of the ex post facto claim that the board should have applied the pre 1997 criteria to Mr. Holmes. With regard to Carmel, I'm talking about your ex post facto claim, where you focus a lot of your argument on the idea that this is a procedural change. But the Supreme Court has told us that what we should be looking to is whether there has been a significant risk of increasing the measure of punishment and has disavowed the procedural substantive distinction that you seem to be drawing. So why shouldn't we just focus on whether there is an increased risk? I think I better understand your honor's question now. So yes, it is a two part inquiry to determine whether the new parole law violates the ex post facto clause. The first prong being, does it apply retroactively? And the second, does it disadvantage the offender affected by it? So it is not enough for the inmate to simply show that the board relied on this new law or procedure. He must show that he was personally disadvantaged by it. So turning to that here, the board's decision primarily focused on new information or information that had been developed since prior hearing. Information that could have been considered prior to the 1997 amendments. So this included the mental health evaluations that came to the conclusion that Mr. Holmes had a tendency towards violence, had an antisocial personality, lacked any genuine remorse for his actions. Mr. Holmes had a high risk for future violence. LAPR indicated a high risk of recidivism within two years of release. And the panel interview with Mr. Holmes, which indicated insufficient problem resolution, lacking insight into his criminal behavior, minimization of his own conduct, including blaming his victims, multiple victims for his murderous behavior. So regardless of the 1997 amendments, there was a plethora of indicators that Mr. Holmes was not an appropriate candidate for parole. Well, you may be right. And if this were in front of the parole board, perhaps it would say, focused exclusively on that new information, that it reached the same result. But on this record, we have a parole decision that spends a lot of time recounting in great detail his prior offenses, the pattern that goes along with those prior offenses. And if we have, we're working under precedent like Mickens-Thomas and Richardson that tell us when there's even a change in weight in one of the factors that the board's considering, where there's consideration of a completely new factor focused here on his prior offenses, how do we not have the same kind of ex post facto problem? While the board did consider those additional factors, some mitigating factors, some factors like his becoming increasingly more serious, nothing in the 1997 amendment here required the board to place any weight on any of the given factors. And that was the problem in Mickens-Thomas. So the 1997 amendment simply expanded the evidentiary basis that the board could consider, but did not require the board to place any undue weight. But here, don't we effectively have a statute that previously assigned zero weight to old information, which is why, I mean, we have on this record that the stated purpose of the commission to enlarge discretion of the board with the 97 amendment and that the new information was a significant and inappropriate limitations. And it's explanation that pre-97, that rule effectively required the board to grant parole unless there had been infractions in between the first and second or successive hearing. So don't we, in fact, have no weight that used to be ascribed if you needed an infraction in order to grant parole. And now a factor that can have that previously couldn't. We do submit that the study commission's analysis was sort of an overstatement. The legislature did base the amendments on the results of the study commission, but it was not bound by it. In addition to that, your honor had raised Mickens-Thomas and Richardson, which truly is the best example. In Mickens-Thomas, this court did find that there was an ex post facto violation. In that particular case, public safety was post amendment required to be considered first and foremost, which we don't have here. In that case, an inference could be drawn and was drawn by the court that public safety had been given undue weight. So in that case, on the opposite side, there was the department of corrections official recommendation that it be released. He had complied with institutional programs, psychological evaluations that recommended his release. The department of corrections voting sheet indicated no contraindications or anything indicating that he should not be paroled. So in that case, an inference could be drawn under that particular set of facts that public safety had been given undue weight. On the opposite side of the spectrum, we have Richardson, where this court did not draw the inference that public safety had been given undue weight. In fact, it said the opposite, that it was one factor, but not the conclusive factor that had been considered. Things that distinguished Mr. Richardson from Mickens-Thomas, he had not shown that the rate of parole had been changed post the amendment. He had not shown that he would have been granted parole under the prior guidelines. In fact, he had been denied parole before and after the amendment for essentially the same reasons. And that is very similar to what we have with Mr. Holmes here. We have several contraindicators and information that could have been considered regardless of the 1997 amendment. But we don't have to draw an inference that the board considered factors that it couldn't have considered previously, because the board says so explicitly over many pages. So why aren't we then in the Mickens-Thomas realm of cases? In Mickens-Thomas, again, the issue was the weight. So here we do not have any requirement in the 1997 amendment that any particular weight be given to any of these. But isn't Judge Krause's point that before the 1997 amendment, old information wasn't entitled to any weight? It could get zero weight, and now actually, it's not entitled to any weight after the 1997 amendment, it can get weight. And so that, I mean, it might be a little different than Mickens-Thomas, because Mickens-Thomas said you have to give weight to certain things, and I guess this has a discretion, you may give weight to this, this may be what you consider, but both go to weighting. And if Mickens-Thomas yielded, forget what the outcome was, was that a remand for discovery? I forget what that was, but a violation, the next post-facto violation, then why shouldn't this case as well? And isn't that where you really have to do your work to distinguish the two? And this case certainly is, as an as-applied challenge, completely distinguishable from Mickens-Thomas. You know, as I mentioned before, there were so many indicators in Mickens-Thomas that demonstrated that that individual had been personally disadvantaged by the change in the law. So I won't repeat them all again, but the Department of Corrections recommended his release, the Psychological Evaluations recommended his release. Here, I mean, we have quite the opposite. We have psychological recommendations that are absolutely not recommending release, an LSIR that indicates a high risk of recidivism. You know, we have the panel's interview with him with so many contraindications to parole. So this- based on the commission's report, that pre-97, the board was required to grant parole unless there had been an intervening infraction. And Mr. Holmes, under this record, appears not to have any intervening infractions. Then how do we know that applying the pre-97 law that the board would still have denied parole? Again, the study commission is an overstatement, but in Mr. Holmes' particular case, again, there's so many contraindicators. I understand that there are these contraindicators, but in the record we have before us, and you've also argued that the commission's report overstates what the state of affairs was pre-97. That may or may not be, but isn't there a requirement of some, at least, discovery on that point to see if, in fact, the absence of an intervention. So this case was dismissed prior to discovery. There is no discovery that would overcome the court's finding that he failed to state a claim here. And again, I keep turning to the second prong of the ex post facto analysis, because even at the pleading stage, Mr. Holmes was considered on a case-by-case basis. And this is not a case, for example, like Brown versus Williamson, where the prisoner clearly demonstrated that the change in the scoring system had changed the base guideline range for him. So he was clearly able to demonstrate, I think it was by a range of nine to 12 years, that he had personally been disadvantaged by the change in that case. But again, this is more like Richardson. So Richardson could not show, could not make that showing beyond speculation to hurdle the second prong. And that's what we have with Mr. Holmes here. He has... But wouldn't discovery here make all the difference? I mean, if, for example, that administrative code provision was followed in successive parole hearings, then wouldn't you have a much stronger argument that there really had been no change, and these types of things could have been considered and were considered previously? On the other hand, if discovery revealed that the commission's report was accurate, and that the board approached cases pre-97 looking to intervening infractions as dispositive, and in their absence, would grant parole, then Mr. Samyak would have a much stronger argument. But in the record before us, we don't have any discovery suggesting what the board's actual practices were. So on the face of it, where we're dealing with the motion to dismiss, and our standard of review there that requires that we draw inferences in favor of the then plaintiff, and here appellant, don't we need to remand for discovery on those issues? I would note again that the study commission, for what it's worth, was not binding on the legislature. So the legislature adoption of some of the recommendations of the study commission doesn't necessarily mean that the study commission's findings were binding on the legislature in enacting this law. So what we turn to here is the two-pronged ex post facto analysis. And in this particular case, Mr. Holmes has not demonstrated that he was personally disadvantaged by the change in the law. So whether the study commission overstated this or not, we submit that it did. Again, it is not binding on what the legislature did here. So let me ask this question. Is it relevant at all how the parole board adjudicated parole determinations before the 1997 law? Is it relevant? Yes. Is it dispositive? No. We are submitting to the court that this is a facially neutral procedural change. Let me press you on that. It seems that it goes to the substance of the evidence that can come in. So it's really, really weird to say it's a procedural change. Whole new categories of substantive evidence can come in. That's a pretty fast switcheroo between process and substance, right? Procedural change, whole new categories of substantive evidence can come in. So would it still be a procedural change if they said, okay, the only substance evidence that can come in is evidence adverse to Mr. Holmes? Just a procedural change here. That's all it is. Only adverse evidence can come in. It seems that that distinction that you're drawing, putting aside Judge Krause's earlier question, whether it's even in play after Carmel, oh, I'm missing it. But you can try to illuminate it. But right now, I'm missing it. I'm sorry. I will address that. And while not binding on this court, the Trantino decision really did address substantive versus procedural changes. And perhaps using that analysis, I can be more informative in answering your question. But for example, in that case, the court did distinguish between a change in the law that changed the suitability standard. So there they said, changing the suitability standard, that does change the substantive criteria. And they to expand the information that it could consider. Isn't it just a proxy, though, for sufficient risk slash significant risk analysis? Isn't that at best just a proxy for that? I mean, there's no bright line, no deep legal principle that animates in this space. They were just using that as a way of saying, hey, risk is lower in that case because of that change. In the Trantino case that the risk was lower? Yeah. I mean, they were just using the substantive procedural distinction as a way of assessing risk, not as a freestanding dispositive issue. That's my only question. I think if Your Honor's question is, are we sort of putting forth that just sort of throwing a blanket over all procedural changes means they cannot be certainly not. So just to quickly address a few more points, because I think my time is running out. We'll grab some additional time as we did, Appellant. Thank you. I do have one substantive question to ask you, because I think you're conceding that the board relied on non-new factors in determining Holmes's eligibility for parole. Is that accurate? I wouldn't say conceding. The board did rely on the new amended statute. So there is obviously in the court's decision reference to factors other than things that could have been considered prior to the 1997 amendment. But it is accurate that that entire period he did not commit any offense while in custody. I believe from 1995 he did not commit any new infractions. Do you not see any inherent unfairness in that, that he was denied parole on non-new factors and being essentially a model prisoner during this whole time? Well, there were additional issues that the board noted with Mr. Holmes's behavior. For example, the mental health evaluations, I believe from 2008, 2011, and 2012 indicated that he was not an appropriate candidate for parole. The 2012 evaluation again concluded that he had a high risk of future violence. The LSIR indicated he had a high risk of recidivism. And the panel interview, which was really striking, indicated that after 38 years of being incarcerated, he still blames his multiple victims for his murderous behavior. But he has not exhibited any signs of violence while in custody? In terms of committing new infractions? No. He has not committed any new infractions since, I believe, 1995. Just quickly turning to the risk assessment, I did want to emphasize that prior to the change in the law, the type of new information that the board could consider, there was no limit on the type of new information. So, for example, the board routinely relied on was administered by the treating psychologist in this case. So, it's simply another tool at their disposal. There's no particular weight to be given to that risk assessment. In some instances, it could even be helpful to a parolee. In this case, it was not. It was completely consistent with all of the other psychological tests that were done. And again, failed to demonstrate that he was personally disadvantaged by the use of that particular tool. So, the district court properly dismissed the ex post facto claim in that regard as well. What if we were to conclude that consideration of the raw information about his or the pattern of prior offenses could not be considered under the 97 law? Would it still be permissible in your view going forward for the board to rely on this risk assessment if the risk assessment itself takes into account that old information? The distinction between the type of information, the old versus new, is sort of strange in the sense that psychological evaluations have always been, not always, but have been considered by the board pre and post the amendment. And those psychological evaluations do necessarily include information about the inmate that is, in terms of time, you know, quote unquote old. So, we did cite to the McGowan case as one example of that. In that case, psychological reports were considered from 1973, 1978, 1993, 1998, and the board actually did comparisons between psychological evaluations to show things like the inmate in that case now denied pedophilic fantasies that he had not denied in the past, that he was lying to evaluators or trying to game the system. So, you know, this idea that somehow the LSIR is comprised of information that the board would not have been privy to prior to the amendment does not, it does not hold water. You know, this LSIR was completely consistent with other psychological evaluations here. And for those reasons, the district court properly dismissed that claim. I've sort of already addressed the due process issue. Let me ask, you point to the data as to the numbers of inmates who have been granted parole since the 97th amendment. So, we have that number. Is there any denominator for us in the record? Any denominator in terms of how many were actually considered for parole? I mean, that would seem to speak to the significance of the 22. These 22 or the significance of that, it was submitted in response to information that was highlighted by the appellant from the Trantino case. The information from the Trantino case was couched by the appellant as confirming that the post-1997 amendment had the effect of disadvantaging all murderers or similarly situated people. So, we did provide some anecdotal evidence to the court to show that that is not the case, that it is not as if the 1997 amendment somehow created a bar to parole for individuals who have been convicted of murder. But again, I mean, even the anecdotal evidence is not sufficient in terms of an ex post facto analysis. We would still have to turn to whether Mr. Holmes was personally disadvantaged in this case. And as your honors have pointed out, I mean, there were so many contraindicators that the board relied on here that really are sufficient within themselves. And for those reasons, the district court properly dismissed his claim. Unless my colleagues have questions, we will return then to Mr. Savignac. Thank you. Thank you. Thank you. Well, the first thing I'd like to say is the state refers to the second prong of the ex post facto analysis, which asks whether the change in law disadvantaged the plaintiff. In the context of parole, the Supreme Court has said what that means. It has disadvantaged the prisoner if it's created a significant risk of keeping him in prison longer. So I think that that's the only legal question in this case, the only legal standard that needs to be applied. The state also noted that nothing in the law expressly requires the parole board to consider this old information. That might be true, but an express requirement is not necessary to before 97. They weren't allowed to consider the old information. Now they are allowed to consider it. They, in fact, did consider it in this case. The state acknowledges that the parole board gave what the state refers to as non new reasons when it denied parole. I think that that's more than enough to show the significant risk. I'd also like to stick up for my client a little. It's true that the parole board took a negative view of him in certain respects, and I haven't seen the actual interviews with him that were the basis for the assertion that he doesn't show remorse and so on. But the objective fact is that he has been infraction free since 1995. So 25 years, that's longer than the overwhelming majority of those death row prisoners had to spend in prison before they were paroled. He's been completely infraction free living in prison, and he's close to 70 years old. Judge Fuentes, please go ahead. You don't think that exhibiting a sense of remorse for past crimes is a significant factor that a parole board can take into account? I don't doubt that that is a factor that the parole board can take into account. I'm just saying I don't know what that's a subjective statement by the board. I don't know what the basis for it is. And to the extent that the state is trying to paint my client as this person who is currently an awful evil individual who's sure to commit more crimes if he's released at the age of 69, I think that the fact that he's been infraction free for a quarter of a century is the strongest objective evidence on that point, and it says otherwise. The district court here has noted that the board used the substantial likelihood that the inmate would reoffend standard, that is, use the language in making that pre-97 statute, and concluded that he therefore had the benefit of the pre-97 statute. Why shouldn't that be our focus? And the various types of information, the types of evidence that can come in don't change the standard that was ultimately being applied. So why shouldn't that be our focus in terms of what is new versus old? Well, so as you point out, the law was changed in several respects in 1997, and some of those respects are not applied retroactively. So this is described at the footnote on page 10 of our brief. The parole board said that it was applying the old substantial likelihood language, and so there's no challenge there, there's no retroactivity there. But I think, so we have to ignore that because that's not part of what's being challenged. What's being challenged, what is applied retroactively is the deletion of the word new. And again, the only legal question is whether that change created a significant risk of keeping Mr. Holmes in prison longer. And I think based on the experience of the people in the Trantino case, and based on the opinion that the board wrote in this case, really focusing on Mr. Holmes' crimes from many decades ago, I think that we've shown that significant risk. So if the board were to do this over again, and let's just say in their opinion, they said, factual history, we give this no weight. And then, and as they detailed the factual and procedural history, they just basically cut and paste his prior crimes part, but just said, this is just for background, just as a biographical, you know, sometimes decisions come with a factual history. They say, this is just a factual history. Now we do our analysis, and if they just change the headings on their report to change the first six pages to factual history, parens, no weight given, and then they change the last four pages to analysis, parens, all the weight given, if they were to do that, that's not an ex post facto problem here. They would just say, look, on that record, we can see that there's not a significant risk that the change in standard altered the outcome. That would be a much harder question. I mean, in that case, the plaintiff would have to ask a federal court to look behind the language that a state agency used and say, come on, obviously, this, this influenced them. And so I wouldn't concede that there would be no claim there. But that would be a real uphill battle for a plaintiff in a case like that. And counsel, at this stage, we're reviewing the dismissal at the motion to dismiss stage. I take it what you're asking of us is simply that your case be able to move forward to even assess whether there is a significant risk that his term of imprisonment was enlarged? Well, certainly, that would be a disposition in our favor. But I would go further than that. I think in this case, the arguments that we've submitted already show as a matter of law that there was a significant risk. And this court should should so hold and remand for, you know, further consistent proceedings. Well, that goes back to whether we think of this as, as an as applied challenge or not. And I thought, at the outset, in response to Judge Phipps's questions that you agreed, we should look at this as an as applied challenge. Are you saying, in fact, you are continuing to argue that as a matter of law, the amendment on its face for all inmates constitutes an ex post facto violation? I certainly think as a matter of law, it constitutes an ex post facto violation in this case, because it is clear from the face of the the opinion rendered by the parole board, that this old information played enough of a role to create a significant risk. It changed the So, so let me just tease that out. Because because normally, this is how I would think about pleading a case, you would say, have we plausibly alleged that gives most plaintiffs some wiggle room, they don't have to conclusively allege they get the plausibility standard, it's not quite Conley v. Gibson, but it's it's plausibility. Have we possibly alleged a significant risk of increased punishment. So normally, you get you get to to water down of the ultimate goal, plausible and then significant risk. But here, what you seem to be saying is the face of the parole board decision is despised in one way or another. And so if you read it as creating a significant risk, then, then we clearly plausibly alleged and if you read it is not creating a significant risk, then we don't plausibly alleged it seems that by putting the focus on that one decision, we've kind of graduated up almost into a pure significant risk analysis instead of letting plausibility do anything. Well, I think that we should prevail on a pure significant risk analysis looking not not just at the parole board's opinion, but also at things like Trentino, which I think makes clear that there's been a sea change in the availability of parole for prisoners who are similarly situated to my client. So before the district court, then would you be seeking a judgment on the pleadings? Well, I don't. So I was only appointed to to argue the appeal, whether it would be a judgment on the pleadings or a summary judgment motion. My point, I suppose the point I'm making is there are no facts in dispute that matter to the resolution of this case as a matter of law. In other words, this is not a case that comes down to factual disputes. If the court looks at the the information that is before the court now, it should say, yes, there's a significant risk that the application of this new law to Mr. Holmes changed the results in this case. And that would be that would be answering the one open question that exists in the case, because there's not a dispute about whether this is actually the parole board's opinion, for example. But isn't there a dispute as to how the board pre-97 was conducting its proceedings? What what types of information it considered to be old and new and whether, for example, that administrative code provision was applied in successive hearings? I don't think that there's a dispute about that among the parties. The state says at page 28 of its brief that the board noted certain new non new factors, such as Holmes's criminal record, and then it became increasingly more serious. Elsewhere in their brief at page three of their brief, they say before 97, the board could only look at new information since the prior hearing under the amended version with the word new deleted. The board was authorized to consider an inmate's entire record when determining parole eligibility rather than being restricted to new information. And the study commission statements are to the same effect. So I think that the parties agree that the the facts that I'm pointing to facts about Mr. Holmes pre-incarceration crimes were off limits under the pre-1997 law. I don't I don't see any dispute about that in the filings. So so it seems to me that what you're saying is basically we've got a motion to dismiss that effectively is a summary judgment motion. And if you prevail on appeal now, and this goes back to the district court, then kind of by fiat almost, then judgment would have to be entered in favor of your client in some way. Am I understanding kind of the arc of your case? Because if you win, because it was improperly dismissed, because there is a significant risk of increased punishment, then it seems that you've kind of won everything in terms of the district court would just have to enter judgment in your favor if we make that determination, right? Well, I think that that's right, because the case comes down to a single question, which is a question of law. And there's more than enough before the risk standard. And that may be atypical, but I think that there are certainly plenty of cases where a lawsuit is filed against government actors and the government moves to dismiss and basically says, yeah, we did this, but it's legal. And if the court says, no, it wasn't, it's not like, you know, it's not legal to arrest someone for burning the American flag, then that's the end of the case, because the case is in a dispute about did he really burn the American flag? Did we really arrest him? The dispute comes down to that legal question. And so that appeal at the motion to dismiss stage would effectively decide the case. I guess all this left would be for the parties to try to negotiate some sort of new hearing on their own terms without a judgment forcing them to do that. I guess there's still wiggle room there, but in terms of the legal issue, it's solved. Yeah, I think that's right. It was before that consideration of pre-1997 conduct should be off-limits. I'm sorry, could you please repeat the question, Judge Fuentes? Were you suggesting before that consideration of pre-1997 conduct would be off-limits in considering parole? Yes, it's not just pre-1997 conduct. It would be parole hearings. So the hearing that we're discussing today, I believe, occurred in 2012, and the previous one was in 2002. So facts from before 2002 should have been off-limits at that 2012 hearing. And is that based on the allegations in this particular complaint, or if we were to would the consequence be that for all of the, at least according to the New Jersey Appellate Court, 864 inmates per year whose cases may have been reviewed considering new information, that they would survive a motion to dismiss? All of those, in effect, would need to be re-heard by the parole board? Well, I don't know if that is, I don't know what the number of people, I think that was the number that they said in 1997 would be affected. I don't know how many of those people are still in prison and trying to get out. So the number of people who have potential ex post facto claims would be smaller. Whether they would all survive a motion to dismiss, I think that that may be the case, but it may also be the case that if you have a situation where someone just killed another prisoner, and the parole board says, well, we're not letting you out because you just killed another prisoner, that's new information, and that would be kosher under the previous law as well. So certainly you can imagine cases where it's very obvious that there is no significant risk that the result has changed because the individual wouldn't be getting out under any version of the law. Okay, we will take the case under advisement, and we'd like to provide for our court and, and for justice. Thank you both counsel for your excellent briefing and argument.